UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------X

JEREL WILKINS; NAJERA YOUNG; DANIELLE
GOODWIN; ZELINDA YOUNG; and ZELINDA
YOUNG o/b/o O.Y. (a minor);                                         COMPLAINT
                                                                           AND
                          Plaintiffs,                                JURY DEMAND

        -against-

PATERSON; PATERSON POLICE DEPARTMENT;                    Civ. No. _____
POLICE OFFICER NIGEL BURGESS, indivually and
in his official capacity; POLICE OFFICER M. LUCERO,
individually and in his official capacity; PATERSONPOLICE
OFFICERS JOHN AND JANE DOES 1-10.,
Individually and in their official capacities.

                          Defendants.

---------------------------------------------X

        Plaintiffs by, their attorneys, assert the following complaint against the Defendants:

## NATURE OF THE ACTION

1.  Plaintiffs Jerel Wilkins, Najera Young, Danielle Goodwin, Zelinda Young and O.Y.

    bring this action for compensatory damages, punitive damages and attorney's fees

    pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 for violations of their state, statutory,

    and civil rights, as said rights are secured by said statutes and the Constitutions of the

    State of New Jersey, and the United States, as well as New Jersey common and law and

    New Jersey Civil rights Act.

## JURISDICTION AND VENUE

2.  Venue is proper and the Court has jurisdiction over this action because Plaintiffs reside in

    Passaic County, the actions giving rise to the complaint occurred in Paterson New Jersey.

1

## THE PARTIES

3.  That at all times herein mentioned, Plaintiffs, were and still are residents of Passaic County, New Jersey.

4.  Defendants City of Paterson and Paterson Police Department are New Jersey municipalities duly organized and existing under and by virtue of the laws of the State of New Jersey.

5.  Defendant City of Paterson ("Paterson" or "City") maintains the Paterson Police Department ("PPD") a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New Jersey law, acting under the direction and supervision of the municipality, City of Paterson.

6.  That at all times hereinafter mentioned, the individual Defendants Police Officers Nigel Burgess and M. Lucero, and Police Officers John Does 1-10, (hereinafter collectively referred to as "Officers" and/or "Defendants") were duly sworn Police Officers of PPD and City of Paterson and were acting under the supervision of said department and according to their official duties and were acting within the scope of their authority. All officers are served in their individual and official capacities.

7.  That at all times relevant to this action, the Defendants were acting under color of State law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of Paterson.

8.  That at all times relevant to this action, Defendants Police Officers are/were police officers and employees of the Paterson and PPD, and at all relevant times participated in

the below conduct and are being sued in their individual and official capacities and were acting in their individual and official capacities.

9.  Throughout the incidents complained of herein, Defendant officers were acting as agents, employees, and officers of Paterson and PPD.

10. Defendant Police Officers John Does 1-10 are employees of Defendant Paterson and/or PPD, were involved in the actions complained of herein whose identities are not yet known.

11. Plaintiffs served a notice of tort claim and have complied with all requirements to assert their claims.

### Facts

12. On or about August 29, 2020, Jerel Wilkins ("Wilkins") was lawfully in the area of 594 E. 18th Street in Paterson, New Jersey when he was confronted by a PPD officer who tackled him to the ground.

13. While on the ground, between nine and twelve additional officers converged on the location where Wilkins was tackled.

14. These officers included Burgess and Lucero and approximately ten other presently unidentified officers.

15. Officer Burgess, without legal justification or cause, tackled Wilkins to the ground.

16. Some of the officers began to beat Wilkins as he lay helplessly on the ground while other officers stood by watching the assault.

17. Video surveillance of the incident depicts the vicious assault.



18. The video surveillance also captures the non-assaulting officers' total inaction and
failure to intervene as they are duty bound to do.

19. As a result of the vicious attack Wilkins was transported to the St. Joseph's Medical
Center where he was treated for his injuries.

20. At the tail end of the officers' violent attack on Wilkins, Najeera Young, Danielle Goodwin,

Zalinda Young and O.Y. approached the scene to check on Wilkins and see what was going on.

21. As Najeera Young, Danielle Goodwin, Zalinda Young and O.Y. approach the scene a group of officers approach them seconds before they were doused with pepper spray.

22. A member of this initial group hears something, waves to the females and the group turns around to retreat away from Najeera Young, Danielle Goodwin, Zalinda Young and O.Y.





23.     Despite the majority of the officers turning to retreat from Najeera Young,

Danielle Goodwin, Zalinda Young and O.Y. the presently unknown officer storms

through from the back of the group and indiscriminately sprays Najeera Young, Danielle

Goodwin, Zalinda Young and O.Y. with pepper spray because he, unlike the retreating,

was upset with what the females said and wanted to assault them in response.





24. Incredibly, as the unknown officer unleashes the pepper spray the video surveillance

shows the other officers on the scene with their backs turned and who were retreating did

nothing to stop or intervene in the depraved assault.

25. In fact, none of the officers even offered aid to Najeera Young, Danielle Goodwin,

Zalinda Young and O.Y.

26. In an effort to justify their conduct, Officer Burgess swore out a false criminal complaint against Wilkins.

27. Each of the Plaintiffs suffered significant physical and emotional injuries as a result of the Defendants unlawful conduct.

28. Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages (against the individually named officers in their individual capacity only) along with costs and attorney's fees.

## Count I

### Unlawful Imprisonment/False Arrest/Unlawful Search and Seizure
### Pursuant to Federal and State Law
### (As to Wilkins Only)

29. Wilkins repeats each and every allegation in this Complaint as though fully set forth at length herein.

30. Without any probable cause or legal justification, Defendants unlawfully searched, seized, stopped, and arrested Wilkins.

31. Wilkins was conscious of his arrest, detainment and confinement, and at no point consented to it.

32. As a result of Defendants' conduct, Wilkins was caused to suffer personal and physical injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to their reputation and standing within their community.

33. Wilkins was unlawfully seized under the Fourth Amendment and under the totality of the circumstances the Defendants' actions were not objectively reasonable, given that Defendants illegally searched, falsely arrested, detained, seized Wilkins and savagely beat

8

him.

34. As a result of Defendants' conduct, Wilkins demands judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages along with costs and attorney's fees.

**Count II**
**Excessive Force**
**Pursuant to Federal and State Law**
**(As to All Plaintiffs)**

35. Plaintiffs repeat each and every allegation in this Complaint as though fully set forth at length herein.

36. Defendant Police Officers at all times relevant, were duly appointed, and acting agents and officers of the City of Paterson and the PPD.

37. Plaintiff Wilkins was unnecessarily and violently slammed to the ground, punched and struck multiple times by Defendants resulting in his admission to the hospital.

38. Plaintiffs Najeera Young, Danielle Goodwin, Zalinda Young and O.Y. were unnecessarily and violently pepper sprayed for no lawful reason.

39. Plaintiffs suffered physical and emotional damages including but not limited to pain, bruising, abrasions, trauma to eyes and face, deeps cuts and bruises as a result of the actions of Defendants.

40. The use of force was unwarranted, excessive, and not at all proper or appropriate. At no point did any of the Plaintiffs violate any law, resist arrest, or in any way warrant any use of force.

41. Defendants intentionally and/or recklessly used unreasonable and/or excessive force on Plaintiffs, thereby depriving Plaintiffs of their right to be free from the use of unreasonable force in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. § 1983, the Constitution of the State of New

Jersey and the Law of the State of New Jersey including, but not limited to, the New Jersey Civil Rights Act.

42. As a result of the above conduct, Plaintiffs were caused to suffer personal and physical injuries, violation of their rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to their reputation and standing within their community.

43. As a result of Defendants' conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages along with costs and attorney's fees.

**Count III**
**Assault/Battery/Negligence**

44. Plaintiffs repeat each and every allegation in this Complaint as though fully set forth at length herein.

45. Defendant Police Officers committed an assault and battery by striking Wilkins about the head and body and slamming him into the ground and using OC spray against Najeera Young, Danielle Goodwin, Zalinda Young and O.Y.

46. Defendant Officers' actions were not privileged or consented to. They placed Plaintiffs in imminent apprehension and fear of being struck and unwanted physical contact and force, which the Defendant officers employed against Plaintiffs.

47. The Defendant Officers were acting within the scope of their authority as Paterson Police officers, to further the benefit of their employer and within the scope of employment.

48. The Defendants had a duty to not use force upon the Plaintiffs. They violated that duty by using force against Plaintiffs, causing them to suffer permanent psychological and physical injuries.

49. Even assuming, arguendo, that the Defendant Officers were required to use force, they were not permitted to use the force they employed as described herein.

50. Defendants were negligent in how they handled Plaintiffs and in the performance of their job function while acting within the scope of their employment.

51. The Defendants subjected the Plaintiffs to such deprivations, either in a malicious or reckless disregard of the Plaintiffs' rights or with deliberate indifference to those rights used guaranteed under the Fourth and Fourteenth Amendments of the United States Constitution as well as the New Jersey State Constitution, the NJCRA, and common law.

52. Defendants were negligent in how they treated the Plaintiffs. Defendant Police Officers committed these acts without legal justification or consent of the Plaintiffs.

53. As a result of the above impermissible conduct, Plaintiffs were caused to suffer personal and physical injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to their reputation and standing within his community.

**<u>Count IV</u>**
**Violation of First Amendment and Retaliation**
**State and Federal Law**
**(As to Najeera Young, Danielle Goodwin,**
**Zalinda Young and O.Y.)**

54. Plaintiffs repeat each and every allegation in this Complaint as though fully set forth at length herein.

55. Defendants retaliated against Plaintiff Najeera Young, Danielle Goodwin, Zalinda Young and O.Y. for exercising their right to freedom of speech.

56. Defendants retaliated against Plaintiffs for objecting to their unlawful conduct and unlawful orders.

57. Plaintiffs were subject to retaliation for speaking out regarding the brutalization of Wilkins and the unlawful conduct of Defendants.

58. Plaintiffs were subject to threats, coercion, and physical harm as a result of exercising

their right to freedom of speech.

59. As a result of the above constitutionally impermissible/unlawful conduct, Plaintiffs were caused to suffer personal and physical injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to their reputation and standing within their community.

<u>**Count V**</u>
*Monell*/**NJCRA Liability/Municipal Liability**

60. Plaintiffs repeat each and every allegation in this Complaint as though fully set forth at length herein.

61. At all relevant times, Defendants, Paterson and Paterson Police Department, were the employer of the individual Defendants and the individual Defendants were acting as their agents, servants and employees.

62. Paterson and Paterson Police Department failed to use reasonable care in the selection of its employees, and/or servants, failed to properly train and/or supervise the individual Defendants, and failed to provide the appropriate safeguards to prevent the assault, use of excessive force, unlawful search and entry into the home, false arrest, improper detention and imprisonment, malicious prosecution and violation of the rights of Plaintiff.

63. For example, Paterson and Paterson Police Department, including its chief of police/police director, failed to train the officers in this case in probable cause as they accosted and stopped Plaintiff Wilkins without legal justification to do so.

64. By way of further example, Paterson and Paterson Police Department, including its police chief/police director, failed to train its officers in use of force so as to prevent the Defendant officers from assaulting Plaintiffs and applying excessive force against the Plaintiffs.

65. They also failed to train their officers to not assault civilians, use excessive force, or

arrest them without justification. Indeed, officers at Paterson use force at an alarming rate, and are amongst the departments that use the most force in the State. It is clear that there is a need for training and supervision regarding the use of force, and that there is deliberate indifference to the use of same.

66. Paterson failed to train its officer in the law regarding public spaces.  Moreover, Paterson failed to train its officers that the force used against Plaintiffs is excessive and unlawful, and that no force should have been used against them simply for objecting to the brutality with which the Defendant officers were handling Wilkins. Moreover, Defendants failed to train the Defendant officers in probable cause, warrantless searches, and unlawful arrests.

67. Paterson and Paterson Police Department, including its police chief/police director, failed to teach their officers that even if Plaintiffs were suspects of some crime, they are not permitted to assault/use force upon that individual, and if they see other officers engaged in misconduct, they must intervene to prevent it. In this case, as in the case of Defendant officers' past use of force and employment of excessive force, there was no need to use any force, even if Plaintiffs were suspected of committing a crime, which they were not.

68. Paterson and Paterson Police Department, including its Police Chief and Director, thus created a tacit policy and custom of permitting the Defendant officers' actions to continue with their imprimatur and approval, with the natural result being the violation of Plaintiffs' rights.

69. Paterson, Paterson Police Department, and its Police Chief's failure to train its officer in the use of force, requirement to intervene in unlawful use of force and false arrests, and in probable cause were the proximate cause of Plaintiff's injuries as Plaintiff's injuries were caused by the unlawful use of force by the Defendant Officers, and unlawful arrest

pursuant to the deficient training provided by Paterson, Paterson Police Department, and its Chief of Police.

70. Paterson Police Department, and its Police Chief and Police Director, knew that its officers continually misuse force and employ excessive force, make unlawful arrests and warrantless entries into homes, as well as making arrests without probable cause, particularly the Defendant officers, and that there is an obvious need to properly train its officers in use of force, arrest, search and seizure, and in the Fourth Amendment probable cause.

71. Paterson Police Department, and its Police Chief and Police Director, were aware, or should have been aware, of the shockingly high number of incidents involving force and excessive force by its officers, and in particular the Defendants named herein, but took no action to rectify the obviously deficient training and supervision.

72. What is more, Defendants Paterson and Paterson Police Department failed to monitor, supervise, and discipline its officers, including the Defendant Officers, such that they were deliberately indifferent to the rights of Plaintiff and such failures constitute a custom, policy, and procedure that directly caused the violation of Plaintiff's rights as described herein.

73. Defendants Paterson and Paterson Police Department do not investigate Internal Affairs Complaints.

74. Defendants Paterson and Paterson Police Department purport to investigate IA complaints, but in reality, conduct sham investigations that are aimed at covering up police misconduct.

75. Defendant Paterson and Paterson Police Department's failure to meaningfully investigate use of force, IA complaints, and unlawful arrests is further evidenced by the significantly low rates of sustained IA complaints.

76. Rather than properly adjudicate IA investigations, and meaningfully investigate IA complaints, Defendant Paterson and Paterson Police Department skew the investigation in favor of the officer so that the complaint is either not-sustained due to alleged equipoise in evidence, or incapable of being adjudicated against the officer.

77. The deficient investigations also include not retaining evidence relevant to IA investigations (such as video), not speaking to relevant witnesses, failing to interview complainants, not interviewing officers subject to IA complaints, giving officers an opportunity to change their stories so as to escape liability, misclassifying IA complaints so that they are not investigated, crediting an officer's version of events simply because he/she is an officer, discounting eyewitness testimony in favor of officers, and simply not investigating all IA complaints.

78. Defendants Paterson and Paterson Police Department fail to investigate IA complaints, and maintain IA records, policies, and procedures as required by the New Jersey Attorney General's guidelines.

79. Paterson and Paterson Police Department maintained a policy whereby they failed to investigate Internal Affairs complaints thereby creating a policy and custom whereby officers felt that they could violate the rights of citizens with impunity. These Officers, including the Defendant Officers, know that IA will never hold them accountable, thereby encouraging the unlawful conduct visited upon Plaintiffs.

80. Several officers at the Paterson Police Department have been arrested and charged with crimes as a result of Paterson's failure to maintain a legitimate IA department that monitors, investigates, and supervises its officers. This failure encourages officers, such as the Defendants, to violate the rights of citizens.

81. Indeed, Plaintiffs filed an internal affairs complaint as a result of this incident and has not received any correspondence from Internal Affairs about the status of the investigation, if any. This is consistent with Paterson's policy of not investigating IA complaints, as it has done in other cases.

82. It is clear that the Paterson Police Department failed to investigate the internal affairs complaint of the Plaintiff, as it fails to meaningfully investigate IA complaints generally.

83. Paterson Police Department has a long and well documented history of failing to meaningfully investigate misconduct and to hold its Police Officers accountable. See Colon v. City of Paterson, No. CIV. 12-1653 WJM, 2014 WL 4441503 (D.N.J. Sept. 9, 2014).

84. In Colon, as in the facts in this matter, the Court found that there was evidence that Paterson had a policy, practice, or custom of failing to investigate complaints about the excessive use of force. Colon v City of Paterson, 2014 WL 4441503, at *7.

85. Since Colon, nothing has changed and Paterson has continued its policy, practice, and custom of failing to investigate IA complaints, being deliberately indifferent to the rights of its citizens, including Plaintiffs, and thereby not only making it likely, but guaranteeing that the use of excessive force continues.

86. Despite the obvious need to correctly train its officers in use of force and unlawful arrests, Defendants Paterson, Paterson Police Department, and their Police Chief, have

taken no steps to rectify the deficient training, IA process, use of excessive force, and incidents of false arrest.

87. Indeed, there are numerous cases in this District that have been filed regarding the unlawful pattern and practice of Paterson.

88. This includes sham IA investigations, if any is done at all, that are aimed at insulating an offending officer rather than holding that officer accountable and preventing such conduct from occurring.

89. Additionally, Paterson Police Department has had many officers arrested by Federal Authorities in the recent past for committing crimes in their official capacity, such as use of excessive force, planting narcotics on individuals, and the violation of citizen's rights, including false arrests and use of excessive force. This fact reaffirms the lack of training, supervision, and monitoring at the Paterson Police Department, and the natural and predictable consequences of same.  The violation of Plaintiff's rights as described herein are also an expected and natural consequence of Paterson's failure to train, monitor, and supervise its officers.

90. This continuous arrest of officers, high statistics involving the use of force, high IA complaints, lack of sustained IA complaints, failing to train officers in use of force and arrest, and maintaining a deficient IA department in violation of the Attorney General's Guidelines, points to the overall lack of proper supervision and training at Paterson police Department. It also establishes that officers, such as the Defendant officers, know that they will not be held accountable by Paterson and they continue to act with impunity to violate the rights of citizens by using excessive force and making unlawful arrests.

91. Furthermore, Defendants Paterson, Paterson Police Department, and its Chief of Police and policy makers knew that the Defendant Officers named herein needed training, supervision, and monitoring, but they failed to do so.

92. In the years leading up to the violation of Plaintiff's Rights, upon information and belief, Defendant Officers named herein have lengthy use of force records, in addition to numerous IA complaints for excessive force and unlawful arrest.

93. The Paterson Police Chief and its Police director knew, or should have known, of Defendant Officers' high uses of force, excessive force, lawsuit history, and IA history as it is their responsibility to review these statistics and review the actions of their Officers.

94. In light of the foregoing, Paterson and its policy makers were required to provide additional training and supervision for the Defendant Officers. If they did, the Defendant Officers would either not be on the streets or be subject to supervision so as to prevent the violation of the rights of citizens. In either event, the violation of Plaintiff's rights could have been prevented but for the Defendant's deliberate indifference to the obvious risk posed by the Defendant Officers.

95. If Paterson and its police chief claims to not be aware of the astonishing high use of force by its Officers, including the Defendant Officers, it is only because they were willfully blind to an obvious and easily discernible problematic officer.

96. Moreover, the Attorney General's Guidelines requires that an officer such as the Defendant Officers be identified, monitored, and provided additional supervision and training from his superiors, including the Police Chief and Police Director.

97. Furthermore, upon information and belief, Paterson Police Policies also require that an officer with the history of the Defendant Officers be identified and brought to the

attention of the Paterson police chief for intervention.  Instead, the Defendant Officers were permitted to perpetuate their unlawful conduct unabated and encouraged by the lack of supervision such that they violently and without apprehension used unlawful force and arrest upon Plaintiffs, and violating their rights.

98. Paterson, its Police Chief, and Police Director knew or should have known that the Defendant Officers required additional supervision and training to prevent the violation of the First, Fourth, and Fourteenth Amendments as they violated Plaintiff's Fourth Amendment Rights herein.

99. Furthermore, upon information and belief, their previous unlawful uses of force were similar to the one use against Plaintiffs, including using unlawful/excessive force, and then arresting the civilian in order to cover up the unlawful conduct. This pattern and practice is well known to Defendant Paterson, Paterson Police Department, its chief of police/police director. They failed to take any meaningful action to remedy those issues, thereby ratifying and condoning it as a custom, policy, and practice, and encouraging Defendant Officers and other officers to continue their unlawful conduct.

100.    The prior uses of force were without lawful justification, such as the one employed by the Defendants against Plaintiffs. Moreover, Defendants have previously engaged in false arrest, i.e. arrests without probable cause, and have likely done so to cover up their unlawful actions as they have done with the Plaintiffs here.

101.    Defendants Paterson and Paterson Police Department, including its chief of police/police director, knew of the aforementioned conduct and failed to inhibit it or take any meaningful action, such that it caused the same to happen to Plaintiffs.

102.     These complaints and uses of force were not meaningfully investigated by Defendants Paterson and Paterson Police Department. Defendant Officers remain on the force without any supervision, additional training, or monitoring.

103.     Moreover, despite knowing that the Defendant Officers have displayed propensity to violate the rights of citizens, employ excessive force and use force at an alarming rate, they were not investigated by IA, provided any additional training, or assigned supervision.

104.     The failure of Defendants Paterson and Paterson Police Department violated the New Jersey Attorney General's guidelines requiring intervention, supervision, and monitoring, of such an obviously problematic officer.

105.     Defendants Paterson and Paterson Police Department instead turned a blind eye to the Defendant Officers' conduct, and permitted them to continue to roam the streets without any additional supervision or monitoring, knowing and deliberately indifferent to the fact that they would continue his pattern of violating the rights of citizens by employing unlawful force and making arrests without probable cause, to cover up their unlawful actions, as they did with Plaintiffs.

106.     Indeed, upon information and belief, all of the Defendant officers were subject to several civilian complaints and used excessive force, but said complaints and incidents of force were never meaningfully investigated and the Defendant officers were not disciplined, assigned any supervision, and no steps were taken by Defendants Paterson, Paterson Police Department, and its Chief to stem the clear pattern and propensity of the Defendant officers to violate the rights of citizens.

107.     This deliberate indifference by Defendants Paterson and Paterson Police Department caused the Plaintiffs to suffer the violation of their rights as complained of herein.

108.     Indeed, had the Defendant officers been properly trained, supervised, disciplined, monitored, and their unlawful conduct interdicted, they would not have been able to perpetrate the conduct described herein.

109.     Paterson and Paterson Police Department and its Officers acted under color of law pursuant to an official policy or custom and practice of Paterson and Paterson Police Department whereby false arrest, unlawful searches, seizures, entry into Plaintiffs' home, and the use of excessive for was permitted, tolerated, and condoned, in addition to false arrests and making arrests and seizures without probable cause, and intentionally, knowingly, recklessly or with deliberate indifference failed to properly and adequately control and discipline on a continuing basis its employees, agents and/or servants and/or otherwise failed to prevent the individual Defendants from unlawfully and maliciously conducting, permitting or allowing the false arrest, malicious prosecution and/or use of excessive force upon Plaintiffs in violation of the rights, privileges and immunities guaranteed to Plaintiffs by the Constitution and laws of the United States and/or New Jersey.

110.     Paterson and Paterson Police Department had knowledge of, or had it diligently and reasonably exercised its duties to instruct, supervise, control and discipline its employees, agents and/or servants, would have had knowledge of the wrongful acts and/or omissions identified above and intentionally, knowingly or with deliberate

indifference to Plaintiff's rights, failed or refused to prevent their commission and/or omission.

111.    Paterson and Paterson Police Department, therefore, directly or indirectly, and under color of law, thereby approved or ratified the unlawful, malicious and wanton conduct of the individual Defendants.

112.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs were humiliated, disgraced, suffered damage to his reputation, physical and mental anguish and injury and monetary loss and damage all to their great detriment.

## Count VI
### Failure to Intervene
### Pursuant to Federal and State Law

113.    Plaintiffs repeat each and every allegation in this Complaint as though fully set forth at  length herein.

114.    The Defendant Police Officers had an affirmative duty to intervene on Plaintiffs' behalf  to prevent the violation of their constitutional and other rights.

115.    The individual Defendants failed to intervene on Plaintiffs' behalf to prevent the violation of their constitutional rights despite having had an opportunity to do so.

116.    Instead Police Officers contributed to said violations by watching them and participating in same, and then participating in the unlawful arrest to cover up these unlawful actions.

117.    The individual Defendants failed to intervene on Plaintiffs' behalf to prevent the violation of their constitutional rights.

118.    Each of the Defendant officers engaged in the use of excessive force and assault of the  Plaintiffs.

119.    While each Defendant officer was engaged in the aforementioned actions, the others

failed to intervene to prevent the use of excessive force, unlawful arrest, and retaliation.

120.     The Defendant officers watched as Plaintiffs were falsely imprisoned and subject to excessive force.

121.     Each of the Defendants had an opportunity to intervene as the false imprisonment and use of excessive force was being deployed in front of them and within their immediate area.

122.     Rather than intervene to stop the use of excessive force, and other violations of Plaintiffs' rights, as the law mandates they do, the Defendant officers did nothing and then  attempted to cover up the unlawful use of force.

123.     As a result of the above unlawful conduct, Plaintiffs were caused to suffer personal and physical injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to their reputation and standing within their community.

124.     As a result of Defendants' conduct and inactions, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages along with costs and attorney's fees.

<u>**Count VII**</u>
**Negligent and Intentional Infliction of Emotional Distress**

125.      Plaintiffs repeat each and every allegation in this Complaint as though fully set forth at length herein.

126.     The  aforementioned  conduct  of  all  Defendants  was  extreme  and outrageous,   and exceeded all reasonable bounds of decency.

127.     Indeed, there was no justification for the vicious use of force, arrest of Plaintiffs, and the unlawful arrest. Moreover, using OC spray upon Plaintiffs, punching and striking them, throwing Wilkins to the ground.

128.     Moreover, the aforementioned conduct was committed by employees, servants and/or agents of Defendant Paterson while acting within the scope of their employment and in furtherance of their employment.

129.     The aforementioned conduct was unnecessary, intentional and done for the sole purpose of causing severe emotional distress to Plaintiffs.

130.     The aforementioned conduct was negligent and caused severe emotional distress to Plaintiffs.

131.     Through their unlawful and negligent actions, as more fully described above, the Defendant officers intentionally and/or negligently inflicted emotional distress upon the Plaintiffs.

132.     As a result of the aforementioned conduct, Plaintiffs suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

133.     As a result of the above constitutionally impermissible/unlawful conduct, Plaintiffs were caused to suffer personal and physical injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to their reputation and standing within their community.

134.     As a result of Defendants' conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages along with costs and attorney's fees.

<u>**Count VIII**</u>
**Negligent Hiring, Supervision, Retention, and Respondent Superior**

135.     Plaintiffs repeat each and every allegation in this Complaint as though fully set forth at length herein.

136.     Upon information and belief, Defendants failed to use reasonable care in the hiring and retention of the employees who caused Plaintiffs to be physically, mentally and emotionally damaged.

137.     Defendants knew, or should have known in the exercise of reasonable care and supervision of their employees, the propensities of said employees to engage in the wrongful conduct heretofore alleged in this Complaint.

138.     Upon information and belief, each defendant Officer has a history of IA complaints, use of force, and lawsuits that not only placed Paterson on notice of these officers' propensity, but required Paterson to take action to inhibit this conduct and prevent it from happening, which Paterson failed to do.

139.     Defendants Paterson and PPD grossly failed to train and adequately supervise its Officers so as to prevent the assault, battery, negligence, and other violations of rights as described above.

140.     Paterson and PPD were negligent by failing to implement a policy with its officers to prevent them from perpetrating the above described conduct.

141.     Paterson and PPD are negligent due to their failure to implement a policy with its ranks, or actively enforce the law, supervise and monitor its officers so as to detect and deter unlawful conduct, and train its officers and personnel about it.

142.     Additionally, Paterson and PPD are responsible for the actions of their employees, the Defendants officers, as they were acting within the scope of their employment, with the authority of the Paterson, and its furtherance of their goals, polices, and procedures.

143.     Defendant Paterson and PPD are responsible for Plaintiffs' claims and damages pursuant to Respondent Superior.

144.     The foregoing acts, omissions and systematic failures are customs and policies of

Paterson and PPD which caused Defendant officers to perpetrate and assault and battery against Plaintiffs.

145.    As a result of the conduct of Defendants, Plaintiffs sustained severe emotional distress, physical injury, embarrassment, and humiliation, deprivation of their Constitutional, State, and common law rights, and special damages.

146.    As a result of Defendants' conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages along with costs and attorney's fees.

## Count IX
## Negligent Training Supervision

147.    Plaintiffs repeat each and every allegation in this Complaint as though fully set forth at  length herein.

148.    Defendants were not trained in use of force, unlawful arrest, as well as unlawful warrantless searches and seizures.

149.    Upon information and belief, Defendants failed to use reasonable care in the training and supervision of the aforesaid employees who caused Plaintiffs to be harmed.

150.    Defendants Paterson and PPD was negligent in that prior to and at the time of the acts complained herein, due to the prior history of  Defendant Officers, knew or should have known the bad disposition of said officers and Defendants had knowledge of facts that would put a reasonably prudent employer on inquiry concerning their bad disposition and the fact that the Defendant Officers were not suitable to be hired and employed by the Paterson and PPD, and that due to their lack of training, Defendant Officers should have had adequate supervision so that they would not perpetrate the actions described above. Thus, Paterson and PPD is liable for the negligent hiring and supervision, failure to train, and Respondent Superior.

151.    As a result of the conduct of Defendants, Plaintiffs severe emotional distress,

physical injury, embarrassment, and humiliation, deprivation of their constitutional rights, and special damages.

152.    As a result of the above impermissible conduct, Plaintiffs were caused to suffer personal and physical injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to their reputation and standing within their community.

153.    As a result of Defendants' conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages along with costs and attorney's fees.

## Count X
## Conspiracy

154.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

155.    The Defendants agreed explicitly and through their actions that they would violate the rights of Plaintiffs by falsely arresting them, using excessive force, and unlawfully searching and seizing them

156.    The acts mentioned herein could not be accomplished without the assistance and agreement of the Defendant officers.

157.    Defendants conspired to violate the rights of Plaintiffs, and to cover it up.

158.    Defendants assisted each other in the violation of Plaintiffs' Rights, and then filed false police reports to justify the unlawful use of force, arrest, and violation of Plaintiffs' rights.

159.    As a result of the above constitutionally impermissible/unlawful conduct, Plaintiffs were caused to suffer personal and physical injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to

their reputation and standing within their community.

160.       As a result of Defendants' conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages along with costs and attorney's fees.

### RELIEF REQUESTED

**WHEREFORE**, and in light of the foregoing, it is respectfully requested that the Court:

A.  Empanel a jury;

B.  Award appropriate compensatory and punitive damages (where available by law) in an amount to be determined at trial for each cause of action stated herein including, without limitation, damages to physical well-being, emotional and psychological damages and past and future economic losses;

C.  Award Plaintiff attorney's fees and costs and pre-judgment interest;

D.  All relief provided by 42 USC 1983 and NJCRA

E.  Direct Defendants Paterson and PPD implement policies, procedures, and actions to prevent the foregoing conduct from occurring, including the protection of victims who come forward, prohibiting retaliation, and actually supervising and disciplining of officers, and

F.  Award Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful practices.

### JURY DEMAND
Plaintiff demands a trial by jury in this action for all issues triable by a jury.

### DESIGNATION OF TRIAL COUNSEL
Joel S. Silberman, Esq. is hereby designated as trial counsel.

### CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that the matter in controversy is not the subject of any other action pending or

contemplated. I further certify that I am aware of no other parties who should be joined in this matter.

Dated: May 31, 2022

Respectfully submitted,

By:   *s/ Joel Silberman*

Joel Silberman, Esq.
26 Journal Square, Suite 300
Jersey City, NJ 07306
Tel. (201) 420-1913
Fax. (201) 420-1914
Email joel@joelsilbermanlaw.com